Good morning, and may it please the Court, my name is David Gray. With me here this morning are several members of the family and some of their friends in support. I'd like to reserve five minutes of my time for rebuttal. Please watch your time. I certainly will. Thank you. At its heart, this is a communication barriers case under the ADA. Under the ADA, Congress tasked the Attorney General with crafting regulations to deal with communication barriers. Those regulations are 35.160 through 35.164. 35.160 is really the cornerstone of the claim of D.H. and K.M. in terms of their request for CART. 35.160 in a nutshell provides that the public entity will ensure communication for the disabled that's as effective as communication for the non-disabled. This claim is not based on Section 504 or IDEA. Neither IDEA nor Section 504 have a regulation or a requirement, as does ADA, that obligates the public entity to ensure effective communication, communication that's as effective for the disabled person as the non-disabled. Let me back up a little bit, or not exactly back up, but my understanding of your opponent's position once you get to this point is they don't exactly say this is an invalid regulation, but they rely on their understanding of the merits of the ADA provisions themselves and say, well, the ADA only provides meaningful access, and I guess they're saying that essentially collapses into a similar standard to the one under the IDEA. I'm asking a procedural question now, which is if we agree with you that the ADA, that the IDEA FAP requirement does not determine the ADA question necessarily, is that the end of this appeal and we should just remand with regard to the merits of any ADA issue, including the one I just outlined, or do we go on? I think the court could certainly remand it at that point, because my understanding of what would happen at that point if the case were remanded is the district court would then look at 35.160, the ADA communication regulation, and specifically make findings whether there was compliance or there wasn't compliance. Wouldn't there have to be a showing that there was a genuine issue of material fact for purposes of meeting the ADA standard? Absolutely, and I think you've got multiple questions of fact. I think that you've got competing stories in terms of both students, KM and DH, submitted detailed declarations. But just procedurally, before getting into whether in fact on the current complaints there was a genuine issue of material fact or the current summary judgment motions, is that something that the district court should consider in the first instance, in your view? I think so. I think that's the proper province of the district court, and in these cases when there are such questions of fact, typically they're resolved by either jury trial or a bench trial, depending upon the inclination of the parties. So the net result is that you're asking us, you're telling us now that we should only decide the conceptual legal question of whether having lost on the IDA FAPE question, there is the ADA communications question, however it comes out, is a separate legal question that should be decided without simply saying the IDA governs. And then send the case back. Is that your basic position? I think that's absolutely correct, because what brings us here is nobody ever got to the ADA question. The ADA regulation was never directly addressed by either of the two district court judges. Instead, both of the district court judges looked solely at IDEA, said well under IDEA there's FAPE, therefore any FAPE obligation under the ADA has been resolved, even though ADA doesn't have a FAPE obligation, and the district courts, neither district court ever addressed head-on the factors specified in 35.160. So assuming we just have that pure question of law that Judge Berzon identified before us, and that's the issue that we're considering. As I understand the opposing counsel's argument, the IDA FAPE requirement, or at least one of their arguments, as a practical matter, there is nothing that in addition to meeting that requirement, that's left over that wouldn't be met under the ADA. And in particular under our case in Duval, we identified it as a reasonable accommodation. And the IDEA FAPE requirement, which addresses least restrictive environment and communications and all that, would at least meet that standard and thus exhaust whatever you could get from the ADA regulation. I have two comments on that. Number one, I think section 1415L of IDEA is crystal clear that nothing in IDEA limits or restricts rights under the ADA. It specifically says that. Second, number two, I don't agree with the proposition that the standards under IDEA are effectively the same as under the ADA. Under the IDEA, a cornerstone since the Rowley decision 30 plus years ago, says that you do not, to provide FAPE, you do not have to provide education commensurate with the non-disabled student. You don't enter into that analysis. And essentially in this instance then, I think it says as long as she's getting passing grades and making progress to graduation, that's all that's required under IDEA. I don't necessarily agree with that. I thought that's exactly what Rowley says. But I'm not taking the IDEA issue up on appeal. I think that's a fair reading of Rowley at the time. But you've got other things that go on in a classroom other than passing grades. Rowley says some educational benefit, but the way we've interpreted the IDEA and the regulations themselves seem, as you've argued, to set a higher standard and to cover a great deal of other requirements. Isn't that right? Under IDEA or ADA? IDEA. IDEA has never deviated. I'm not aware of any case under IDEA that deviates from the basic floor of opportunity, that low level. And I'm not aware of any case that deviates from Rowley's proclamation that you do not have to give anything other than what I'm going to call that basic minimal educational benefit. And Rowley, in every other case that I'm aware of, says you do not have to compare and equate what you give the disabled student under an IEP with what you give the non-disabled student. You don't have to equalize. Conversely, however, to get to that floor, there's no cost or difficulty or burden defense. That is absolutely correct. Under IDEA, there is no cost, burden, or anything like that that's part of the analysis under IDEA. So to take it back, the regulation, the ADA regulation, by contrast to IDEA and Rowley, specifically obligates the public entity to make the comparison, to equalize the playing field, to make the communication as effective as for the non-disabled. And then provides a defense. Excuse me? And then provides a defense. And then provides a defense, which neither school district availed themselves of in this case, with respect to that. So far, presumably, if they lost on their proposition that the two collapse into each other, you didn't go to the ADA altogether and raise the defense? You'd go to the ADA altogether. My understanding of that regulation, 35.164, is that at the time the request is made, the agency has to go through basically a process and say, well, we're not going to do it. The head of that agency or the delegate has to say, we can't give you your requested accommodation because we've made a finding that it's too expensive. We're now three or four years down the road. That finding's never been made, never been articulated. For the sake of argument and more of an academic discussion, in theory, that is a defense. So I guess I'm confused about the Duval then. I know that the government in its brief had said, well, maybe we made a mistake in Duval and it's not really a reasonable accommodation. But that is the standard that we set there. I think the difference is, and I think it's confusing, I think it's one of confusion of terms. Under the regulation, you're looking at, is the communication as effective as the non-disabled? When you look at Duval, they start talking about meaningful or reasonable accommodation. In the practical world, that very well may be the same sometimes. But reasonable accommodation under Duval does not necessarily negate the obligation of the public entity to go through that specific process of equating or comparing what is the experience, what is the effectiveness of communication between the disabled and the non-disabled person. I didn't see that in Duval. They didn't? It was looking at whether it was reasonable accommodation for a courtroom setting. Duval spoke in terms of reasonable accommodation for the courtroom setting. And what I'm suggesting is, given the specific language of the regulation to do that, you're looking at this, you know, the regulation is almost a checklist of items. Is communication as effective as for the non-disabled person? Does the disabled person need auxiliary aids to give them equal communication access? The regulation has been revised since Duval. The revision went into effect March 2011 and adds even additional protection. And the regulation goes on to state that they've got to give primary consideration to the request of the disabled person, unless whatever is already in place or, you know, unless the other alternative will be equally effective. And so my preference, and I think the correct analysis, is to look at the language of the regulation, use it as a checklist, and, you know, if we're back in the district court, the district court judge is either going to go through that and say, in the school districts, you've either done this or you haven't done it. And all the facts are going to be put into that mix. It sounds like kind of a jump from the statute. The regulation is much more aggressive than the statute itself is. I don't know that the regulation is more aggressive than the statute, because when you look at the regulation, when you, let me backtrack, when you look at the statute, the statute is very aggressive and has been, when it was reenacted a few years ago, the Congress went out of its way to overturn several Supreme Court cases to make clear that we're looking to really open the door to give disabled folks equal access. And to do that when we deal with a communication barrier is to give them that equal access. We give, we make that analysis. Is this aid, is this auxiliary aid going to give you communication that's as effective as somebody else? And the regulations go on to include things like CART as appropriate auxiliary aids. You had said you wanted to reserve some time. Yes, I do. Unless there are any more questions the court would like me to address now. Thank you very much. Thank you. Good morning. May it please the court, Jennifer Levin-Eichorn on behalf of the United States. I'd like to address three reasons why the district court's decision is in error, but perhaps I'll begin by addressing the questions that you folks have raised thus far. First, as a procedural matter, it is our position that this case should be remanded and that there are sufficient questions of material fact that warrant the district court to reconsider this, whether or not the school is complied with its obligations under the ADA because it did not do so under the appropriate standard. There are genuine issues of material fact because, and the record includes questions of whether or not the school gave primary consideration, which is required under the ADA. Should we be reaching that issue? No. I think it should go to the district court in the first instance. There are sufficient questions here. And in fairness, the school did not have a full opportunity in order to address its ADA claims because it believed it was subsumed under the ADA. The students and the school districts had very different facts with regard to how much this actually affected the students. I'm only addressing with respect to Tustin. With respect to what? With respect to the Tustin case. And in KM and Tustin, there's evidence in the record that she couldn't hear all that was said by the students who sat behind her to her left. There were videos that were played, but they were not captioned. Right. But the, I mean, in terms of conflict of material fact, the school districts had a lot of teachers saying she seemed to be basically fine. So there was that much. That presents a question of fact as to whether or not, to what degree she actually received. Well, if it's a reasonable accommodation. If the standard is a reasonable accommodation, that only presents a fact about how much she's hearing. It isn't whether the accommodation is reasonable or not. I mean, I didn't see anything in the complaint or the summary judgment that creates a genuine issue of material fact about the ADA standard, which is reasonable accommodation under Duval. But that, if we're only addressing the pure issue of law, which is does the IDEA exhaust the ADA, so comply with the IDEA, you've complied with the ADA communication standard, then we don't have to reach that question, whether the complaint or the summary judgment motion raised an ADA issue. And going, beginning with the first question, whether or not the IDEA, whether or not the district court erred as a matter of law, our answer is yes, it did, for three reasons. First, the standards under the IDEA are different than the effective communication obligation under the ADA. Under the IDEA, a student must be provided a FAPE, which is an individualized education program that's designed to meet that student's specific needs. It's focusing only on the needs of the individual, and it's not a comparative assessment, like the ADA. Effective communication is assessed, by definition, as a comparison, providing communication that is effective as provided to others who are not disabled and providing them an equal opportunity to participate in the program. While Duval had an ADA claim, and I believe also a 504 claim, and it addressed it in terms of a reasonable accommodation claim, the better analysis is to address the standards and the requirements that are set forth under effective communication. I understand you think we got it wrong, but aren't we bound by that standard, the reasonable accommodation standards set out in Duval? I think this Court can still apply that the standards set forth in 35160 and do justice to Duval. But Duval used the term equal opportunity throughout. Right. It seemed to understand the term reasonable accommodation in the context of equal opportunity, so it's not at all clear that it was applying something less than an equal opportunity standard. No, I think just as a matter of semantics, it's more correct to use the 35160 language, that one of the significant differences between reasonable accommodation and effective communication is the reasonable modification, the burden rests with the plaintiff to say that this accommodation is reasonable. Under the effective communication standard, you begin with primary consideration for what the individual asks for. That's the starting point that a public entity must begin. It then has its obligation to prove that the alternative it provides, if it provides, is as effective ensuring equal opportunity. My understanding of Duval, or at least a possible understanding of Duval, is that it does quote from the communication standard, and it regards that as the measure of what's a reasonable accommodation. It doesn't say it thinks it's applying it. There may not be a substantive difference between what is a reasonable modification and what is effective communication, but in terms of the analysis of the factors that should be considered. Well, there can't be a difference because the statute says reasonable accommodation, right? Right. So the regulation is obviously trying to implement that standard for the purposes of communications issues. Yes, it is. And it's setting forth the criteria that a court and a public entity ought to consider. So doesn't the faith provide a reasonable accommodation for a student? No, it does not. The meaningful educational benefit. It's not reasonable, and it's not an accommodation, or what part of reasonable accommodation isn't it? The standard is simply different, and is just not as exacting or demanding as effective communication. It's a substantively different standard. Excuse me? It's a substantively different standard. In other words, it's trying to accomplish something different. Yes, it is. It uses different words, but why is it trying to accomplish something different? When I read through the FAPE regulations, which are highly detailed and very solicitous of the needs of the individual student, I see that different words are being used, but I don't see why that's not a reasonable accommodation for that student. Because ultimately, notwithstanding the specificity in the IDEA and the California regulations, it only needs to live up to a standard of a meaningful educational benefit. So when the ALJ said that Cam can hear and understand well enough, that's not the same as saying she has an equal opportunity to participate in the classroom or be provided effective communication. Well, that's not exactly what even the regulation says. It just says that the communications from the public entity to the applicants are as effective as their communications with others. That's right. So that doesn't even go to the rest of the students in the class or anything like that, right? It's as effective as what the... The public entity with that communication with applicants. So it clearly seems to be from the public entity to the applicants. Right? I'm not sure I understand your comment, Your Honor, of what the difference that... Well, it isn't effective communications in the air. No, no, no. It's as effective as others who are in that same environment, who are participating in that program. In this case, who are participating in the students who are in that classroom. That... I see I've greatly exceeded my time. That's fine. Okay. Is there anything else you want to add? If I could just briefly address one of the school's arguments with respect to whether or not the IDA primps the field in the sense of the specific overtakes the general. As the statute made clear in Section 1450 now, and as this Court held in Payne and later in Mark H., there are... The statute says not, so that's a fairly easy argument. Yes. Okay. Thank you. Thank you. May it please the Court. My name is Jack Clark. I represent Tustin Unified School District, appellee in this matter. I would like to direct my comments to several of the points that were made by the appellant in this case with regard to the effect of Section 1415L, and specifically the interrelationship between the concept of meaningful access of the ADA as it relates to... Does the ADA use the term meaningful access?  Yes. And then the case law referring to meaningful access as stated by the United States in their brief. What regulation? It is not a regulation. Well, where does the phrase meaningful access come from? I refer you to the brief from the United States, Your Honor. I would refer the Court to 35160, which is the focus of the inquiry here. And as was made mention of in the argument just before me, the actual Section 35160 refers to communication of the public agency to members of the public, applicants, participants, and companions as are affected with communications to others. I don't see the word meaningful access there any place. I agree with that. Where does that word come from? I quoted that language from the language of the amicus brief. Are you disagreeing that the ADA requires meaningful access? I'm stating, Your Honor, that by complying, as Judge Carter below found, that by complying with the FAPE requirement of the IDEA, we are preventing the discrimination which the ADA sought out to prohibit. Aren't the facts of this case a very good example of the difference? I mean, here you have two young women who apparently are doing quite well in school. One of them is doing extremely well in school and the other one is doing perfectly well in school. And so with the accommodation that was being offered under the IDEA, so if you just look at the IDEA, they're obviously getting a basic education, they're obviously going to graduate from high school, so it appears that their IDEA standards are being met. But on the other hand, they say, we're doing it with a horrible strain. We come home exhausted every day. We can't hear an awful lot of what's going on. We have to work three times as hard as everybody else. That's essentially what I understand them to be saying. And they're saying under the ADA, we shouldn't be having to do that. Yes. Okay. So why isn't that enough of a difference? I mean, then you can argue about whether or not the ADA, in fact, was violated, but their claim is that there are basically different standards here. One of them says, are you going to make it through high school? And the other one says, are you being treated equally with other people in such a way that you're getting your education under the same terms and with the same degree of difficulty and so on? The IDEA does not simply say, Your Honor, that you're going to make it through high school. The IDEA, it's Section 1414 through Section 1415, give very detailed requirements that the public agency must require as opposed, for example, to the ADA, where, as was stated in the argument before me, that you would simply go before an executive officer of a public agency, make a request for something that you believe is necessary, and then a decision will be made based upon, pardon me, undue burden or fundamentally changing the function of the public agency. What are these very specific requirements you're talking about? You mean the FAPER requirements on the IEP and all that? Yes. Yes, but that's all procedure, but what's the ultimate substance? Your Honor, I respectfully disagree with that. It is not all procedure. The IDEA has two components, procedural and substantive. Right. What's the substantive standard? The substantive standard is that the public agency must provide special education-related services that are reasonably calculated to provide and do provide some educational benefit based upon how the child's disability affects him or her. In order to show some educational benefit, and we're not simply talking about academic benefit, the IEP team is required to consider, and this is under Education Code 56341.1, how the child is performing functionally, academically, and behaviorally. For students who have a communicative disorder, a hearing impairment, and or deafness, under Education Code of California 56345d, there is an extensive analysis that the IEP team must go through. I don't really understand what the relevance of the California statute is. Can you explain that to me? Yes. No one's suing under the California statute, right? Yes, because the California statutes are based upon and are implementing the IDEA as set forth in Section 1450. So why? No one's suing under the California statute? Well, Your Honor, the school district followed the IDEA, which contains the same provisions of the California statute, requiring the team to consider both the request by the student, and in this case the IEP team did fully consider the CART request. I'm confused. Does the IDEA say you have to follow state laws if state law is more stricter? In this case, Your Honor, it does not say that. What I was thinking about was that the provisions of state law under Section 56,000 of the California Education Code provide that those sections are to be interpreted as being in compliance with the IDEA. I understand that. So if they were suing under the California statute, we'd be looking at the IDEA, but why if they're suing under the ADA or even the IDEA are we looking at California law? I don't understand it. Well, I was referring to the ---- I thought you were saying something different. I believe ---- I apologize if I confused the Court. That was not my intent. What I was trying to emphasize was the detailed analysis the IEP team must go through, and I was trying to respond to the Court's question to me as to what is the substance. Just to clarify, because I was confused about this, and I thought I was missing something, and I want to make sure I'm not. Very well. My understanding is that what you're saying is that the California law is perhaps more like the ADA communications regulations. And you might be saying that the school district here and the administrative law judges thought that they had to comply with both California law and the IDEA, so they did something that maybe the IDEA itself doesn't require. Is that essentially what you're saying? No, I'm not saying that. Then I'm not understanding it. What I was referring to when I was trying to respond to the substance aspect of the IDEA and the substance aspect is that educational benefit is not simply getting passing grades and advancing from grade to grade. Raleigh references that, but the substance case law interpreted in the IDEA has been very clear that how the child is functioning, again, depending on the discipline effects on her, functionally, academically, and behaviorally are all part of the analysis. So in this situation, Your Honor, the IEP team was required to consider how the student was functioning, how KM was doing in her class, how she was functioning with her peers, and whether or not she was receiving overall educational benefit, not just academic benefit. That was the point I was making. With regard to the issue of the courts below supposedly having not considered the regulation, it specifically considered the regulation, the court quoted 28 CFR 35.160 and then correctly cited the line of cases which this court has enunciated for the proposition that the court will interpret Title II ADA claims as consistent with Section 504 claims and, therefore, having found no denial of faith under the IDEA, there is no denial of faith under Section 504, and correspondingly there would be no denial of a sufficient reasonable accommodation to avoid discrimination. Does it have a faith requirement even in the ranks? No, Your Honor. It does not. It has a requirement. So why are we saying that it does when it doesn't? No, no. I'm referring to the overall requirement of the statute to prohibit discrimination. So if you comply with the requirement of an appropriate education, then you, by definition, have complied with the requirement that you provide a sufficient accommodation to prevent discrimination. When I looked at those cases, I saw that we had held that if you, complying with the IDEA faith was one way of complying with the Rehab Act faith. Yes. But I didn't see anything suggesting that that would also be a way of complying with the ADA communication requirement. Is there any link to the ADA communication requirement? Yes. The ADA communication requirement is reflected in the IDEA requirement that you consider the communication needs of the student. It's specifically provided in Section 1414, so that we are making sure that the child has sufficient supports to be able to access the curriculum. And in terms of this, I'm almost done with my time here. This issue concerning equality, it must be remembered that a student, a typically developing student, has only one real educational right, and that is the opportunity to receive an education. What that student does with that right is fundamentally up to that student. That right is granted by the IDEA. It is reflected by the broader statute, Section 504. And by complying with those requirements, we prevent the discrimination prohibited by the ADA. The Court below has corrected this analysis, and we request that you uphold it. Okay. Thank you very much. Thank you. May it please the Court. Marlon Botlington on behalf of Poway Unified School District. Your Honors, I want to briefly talk about some of the factual differences between our case so that we're all on the same page. I'm sure we are, but I just want to make sure. Some of the differences between the DH versus Poway case, and I represent Poway, is that in our case there was no UNRUAC claim. And as far as the ADA versus the IDEA actions, those issues were bifurcated in our actions. So there was an initial motion for summary judgment done as to the IDEA, then there was a separate motion in hearing on the ADA issue. But in the end, as I understood it, the District Court did not separately address the ADA because it said it had been precluded essentially by the IDEA determination. I respectfully disagree with that, Your Honor. If you look at the opinion, which is in the Excerpts of Record, Pages 2 through 9, it specifically talks about the ADA. What it doesn't specifically mention is the 28 CFR 35.160 that is being relied on by appellants here to establish this higher burden above and beyond what the IDEA requires. And I want to take a few moments to address that. And before I go further, Your Honor's asked where the term meaningful access came from. And that comes from the two cases that describe what the meaningful educational benefit pursuant to the ADA in the educational setting stands for. And that would be the Crowder v. Kitagawa case at 81 F. 3rd, 1480, specifically 1484, and also the Byrd v. Lewis and Clark College case. They went ahead, and I'm getting to the link also you guys requested back. They went ahead and determined what exactly does meaningful participation in the benefits, services, and programs provided by a public NES. And as opposed to going into an analysis as to whether or not there needed to be deliberate discrimination or deliberate indifference or intentional discrimination, they said there has to be meaningful access. And in Byrd, they specifically went on and described that that meaningful access standard has been interpreted by whether the individual enjoyed the benefits of public education, was successful in school with accommodations, and whether the student was able to participate in the mainstream of school. There is absolutely no question that all of those facts are present in this case. No, those were communications cases, right? No, Your Honor, but I am going to get to the communication aspect of it. I just wanted to answer the question where meaningful access came, the standard came from. I think it's important that, and Your Honor's touched upon this, in looking at 35.160A, which is what they're relying on, they are absolutely correct that that portion of the statute says effective as communications with others. In this case, we're talking about auxiliary aids, and that is in Section B. And in Section B of that statute, it talks about we're back to the equal opportunity. There is no statement of effective as communication with others, which, quite frankly, I'm not going to sit here and tell you I understand what that means anyway. But what I do understand is that when they go to talk about the furnishing of an auxiliary aid and services, they talk about equal opportunity. Equal opportunity gets us back into the public school setting ADA cases, where then they talk about meaningful access. So it's our contention that the ADA is in harmony with the IDA at this time, because we are in taking into consideration all of the factors discussed by my colleague Under 20 U.S.C. 1414 D.3, Capital B, Sections Roman Numeral 4 and 5, 34, CFR Section 300.324, and California Education Code Section 56,000.5, 56341B, 4 through 5, and as my colleague stated, Education Code Section 564, 345, which all go on to talk about the necessary effective communication that needs to be provided. Can you tell me again what the relevance of that is? The relevance is the link between what the California requirements are and what the IDA requirements are, are similar, if not identical, to what they're requesting. You want us to read the California requirements into the IDEA? I'm sorry, what? You want us to read the California requirements into the IDEA, even though they're not in the IDEA? Well, the ALJ certainly has done it, and the case law does stand for the proposition that if the California statutes are more strict than the IDEA, then they're to be, in the state of California, they're to be addressed and adhered to. I understand that. So, therefore, if somebody... So, the best I can figure out is that you're saying maybe you're making kind of a collateral stop kind of a point to be dealt with down the line, or that, in fact, what was being applied here was not just the IDEA, but the California statute, and the California statute is more similar to the IDEA, so there might be some preclusive effect or something? I'm not, Your Honor. The point that I'm attempting to make, which obviously isn't clear to you, the point that I'm trying to make to you is that the standards that are within the ADA, including 35.160, are already taken into consideration in the IDEA. Well, they're already taken into account. The best you're saying, and I don't know the answer to this, is they're already taken into account in the California statute. But what's the relevance of that? Well, Your Honor, I've cited the Code of Federal Regulations, in addition to the Education Code, as sections that require effective communication and auxiliary devices. For purposes of our statutory and regulatory analysis of the IDEA as a matter of federal law, is there any incorporation of state law so that when we're doing statutory interpretation of federal law, the federal law itself directs us to look at state law? Is there anything like that? I'm not aware of that, Your Honor. Okay. I can't tell you that I am aware of that. But what I am aware of is, and I want to emphasize this point, that the equal access is along the lines of the Duval reasonable accommodation that you're talking about. You can't look at 35.160A without taking into consideration what additionally is said when you're talking specifically about auxiliary aids, which is what we're talking about in this situation. So you're saying that when we're interpreting the ADA with respect to the auxiliary aids, we don't consider what they say in the A as to whether that's as effective as communication with others. We don't apply that standard. Is that your position? I'm saying to you, quite frankly, Your Honor, I'm not sure what that standard is in A. But what I am sure of is that in B, when they talk about equal access, the courts have defined what that is, and that's meaningful access. And you're saying that's the same standard as under the IDEA? Yes, Your Honor. I am. And I want to make another point, too, here, Your Honor. Counsel brought up 35.164, which is a... The defense? I'm sorry. Is that the defense statute? Counsel was raised as a defense from the standpoint of he said that unless we have a statement from the head, in this case the superintendent of the school district, that it would materially alter the functions of the school district or provide undue burden, and we haven't provided that statement, then we can't argue it as a defense. But what that section also says, Your Honor, is that if we provide another effective communication, then we've also adhered to the reasonable accommodation requirement. It says it directly in 35.164. And what is your position as to whether if we think there is some light between or some possible light between the IDEA in the communication context and the IDEA, do we decide anything other than that, including the kinds of things you're arguing now, or do we just send it back to the district court and say this is not all the same thing, do it again? I would have to. If those are my choices, Your Honor, I would have to say that I would have you send it back on remand and have a factual determination. Do you want us to sign it as deciding now whether you have to have a written document or didn't have to have a written document? No, no, Your Honor. If that's the question, no. The answer is no. I would just like to point out one other thing to the court along the lines of the policies here that we're addressing. Assuming this court and assuming the lower court, if you were to remand it, not advocating for that at all, if you were to do that, assuming that this court found there was a higher standard created by the ADA pursuant to 35.160, I just want to talk about the practical ramifications as it pertains to the IDEA. Initially, we're talking about deaf and hard of hearing students here today, but the statute itself addresses all communication needs. So it would expand itself to speech and language impaired, autistic students who have a communication deficit component to their IEP. I'm not here to tell the court that the ADA shouldn't take care of those individuals, but I am here to talk about what the practical ramifications are. So we are talking about a very large segment of the students. It's personally my position that you can't look at 35.160 without looking at 35.130, which is the general discrimination regulation also put in play by the attorney generals. And that section has just about the same language as 35.160, without the requirement that there be communications as effective. It has any aids and services to any student that is qualified. So the slippery slope that we're going down here, and is my concern, is that the next counsel will come in and use an analysis from this court that says there's a higher burden pursuant to the ADA, to then come in and extend that to every student who has a disability, which would effectively obliterate the IDEA and Rowley. And the Supreme Court, nor Congress, has done that. But one last thing I would like to say. What about the statute that specifically says that if there are different rights under the ADA, then they have a right to those rights? Your Honor, in addressing those different rights, I have never been opposed to the fact that there are different rights that could be addressed by the ADA. In fact, counsel and I have talked about situations where, you know, in certain situations we don't disagree with what the amicus brief says. There could be a practical situation, although be it rare, where even you have a finding that there was a fate provided pursuant to the IDEA, and then there are some separate and additional facts that have not been raised here that the facts that have been raised here have already been heard by the ALJ, but separate and additional facts. Hypothetically speaking, you have a situation where a school district offers a fate pursuant to an IEP. The student disagrees. The student goes to due process. The ALJ finds that there was no denial of fate. A month later, while the IEP is being implemented by the school district, you have a rogue teacher who comes along and says, I'm not implementing it. I'm not doing it. I don't care what goes on here. Arguably, in that situation, you have additional facts that would provide remedies under the ADA, and I believe that the harmony that is already there is that the courts have made a determination that initially, when you're talking about the same services that he's requesting or the appellant's requesting under the ADA, you have a lower mens rea, and that mens rea being meaningful access, which has not been ever stated to be you must hear every word. Even students with disabilities don't hear every word in the classroom. Who knows for what numerous reasons they could be checking out at any particular time, but then in that situation where you have the teacher who is rogue and is not implementing the IDA, what you would probably have is another due process hearing where there would be a denial of fate, but you don't need it in that situation, and that's what 1415L addresses. If you're requesting the same relief, then you're required to exhaust the administrative remedies in the IDEA. Thank you very much for your recommendation. Okay. Thank you, Your Honor. We will have a little time. Go ahead. Nowhere in the IDEA does it say anywhere that for a child with a communication barrier that the district, when formulating the IEP, has to give primary consideration to that request for auxiliary aid. That does not exist in IDEA. That same regulation does not exist in Section 504. It does exist, and it's in 35.160. It's a stark difference between the statutory schemes. Well, it's not the statutory schemes. It's the regulation. The regulation. I stand corrected, and I apologize for that. Which makes it a little disturbing. This is not in the statute. It's in the regulation, and it's in the regulation because the Attorney General was charged with going through the comment process to find out what are the issues, communication being so personal, and so as a low incidence disability, it's not something that a lot of folks commonly even come into contact with. And so mitigating those communication barriers and what it entails was spelled out separately in the regulation because it's such a unique and such an isolating disability that to properly implement the statutory scheme, it was necessary to bring in this additional expertise of the agency to implement that. In terms of Duval, I wanted to follow up on one comment. Duval says reasonable accommodation works to that effect, but when the court in Duval goes through that analysis, it goes through point by point 35.160. So it's basically regarding that as an implementation of reasonable accommodation. Exactly. And that's, again, the Ninth Circuit case law has given the deaf and hard of hearing population the rights of 35.160 both with Duval and with the case of Duffy, which is cited in the brief which applies in the prison context. It's a unique animal because deafness is such an isolating disability. It's an invisible disability because you don't see it. It's not like the handicapped person in a wheelchair that anybody walking down the street sees is never getting up those steps. Unless there are any more questions, thank you very much. Thank you very much. Thank all of you for your very useful arguments in an interesting and difficult case. The cases of KM v. Chester Unified School District and DH v. Poway Unified School District are submitted and we are in recess.
judges: Berzon, Clifton, Ikuta